RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 4/20/11
BY _____

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| NAOMI CARMOUCHE | CIVIL ACTION NO. 09-1474 |
| VERSUS | JUDGE TRIMBLE |
| ENTERGY LOUISIANA, LLC, ET AL. | MAGISTRATE JUDGE KIRK |

### <u>MEMORANDUM RULING</u>

Before the court is a motion for partial summary judgment filed by third party plaintiff Entergy Louisiana, LLC ("Entergy") seeking a judgment declaring that, should the jury find third party defendant Interlink Communications Partners, LLC ("Interlink") liable to any extent for the accident at issue in this case, Interlink shall owe full defense and indemnity to Entergy pursuant to the written pole sharing agreement ("Agreement") among Entergy and Interlink.[1]  For the reasons expressed herein below, the court finds that such motion should be DENIED.

Also before the court is a motion for summary judgment filed by third party defendant Interlink seeking dismissal of all claims against it in the above-captioned suit or, alternatively, a judgment declaring that Interlink will not owe defense or indemnity to Entergy for any portion of fault assigned to Entergy by the jury in this case.[2]  For the reasons expressed herein below, the court finds that such motion should be DENIED insofar as it seeks judgment limiting Interlink's defense and indemnity obligations to only that portion of the fault that may be attributed to it by the jury in

---

[1]R. 66.

[2]R. 68.

1

this case and further DENIED insofar as it seeks outright dismissal of all claims against it in this suit.

## I.     BACKGROUND

### A.     Relevant Facts

This suit arises out of the tragic death of Christopher Joseph Carmouche ("Decedent") on May 30, 2009.  The decedent was fatally electrocuted while working on the roof of his home in Marksville, Louisiana.[3]  Plaintiff, the surviving spouse of the decedent,  filed the above-captioned suit in her individual and representative capacities,[4] asserting wrongful death and survival actions and praying for various damages.[5]  Plaintiff originally filed this suit in the Twelfth Judicial District Court for the Parish of Avoyelles, State of Louisiana.[6]  Plaintiff's suit alleges that the decedent's death was caused by the close positioning of an uninsulated high voltage power line to the roof of her residence.[7]  Plaintiff's suit further alleges that the positioning of the power line at issue violated the National Electric Safety Code ("NESC"), as well as Entergy's own internal rules.[8]

Defendant Entergy timely removed the suit to this federal district court and was subsequently granted leave to file its third party complaint against Charter Communications, LLC ("Charter").[9]

---

[3]R. 1-2 at ¶ 3.

[4]In her representative capacity, plaintiff brings claims on behalf of Grace Carmouche, the minor child of the marriage between plaintiff and the decedent.

[5]Id. at ¶¶ V - VIII.

[6]R. 1-1, 1-2.

[7]R. 1-2 at ¶ 3.

[8]Id.

[9]R. 1-1, 24.

Entergy later amended that complaint to correctly name third party defendant Interlink and dismissed all claims against Charter.[10] Entergy's third party complaint alleges that Interlink or its predecessor-in-interest installed cable communication lines on Entergy's poles, pursuant to an agreement among Entergy and Interlink's predecessors-in-interest.

On December 9, 2010, third party defendant Interlink filed a motion for partial summary judgment seeking dismissal of plaintiff's individual and representative capacity claims for loss of income and support and for funeral expenses.[11] In a ruling dated February 1, 2011, this court granted Interlink's motion as to plaintiff's individual and representative capacity claims for funeral expenses, but denied the remainder of Interlink's motion.[12]

The motions now before the court are essentially cross-motions for summary judgment pertaining to the indemnity portion of the Agreement among Entergy and Interlink, although Interlink's motion also reaches the ultimate issue of liability for the decedent's accident.  Having received all necessary briefs on these motions, the court finds that they are ripe for decision and will consider the law and arguments advanced by the parties below.

**B.**      **Applicable Standard**

Fed. R. Civ. P. 56, as recently amended, provides, in part, that

> [a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant

---

[10]R. 40.

[11]R. 47.

[12]R. 59.

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.[13]

Rule 56 further provides that

[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by...

citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or...

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[14]

When faced with a motion for summary judgment, a non-moving party may not rest on the allegations of the pleadings.[15]   Once the moving party meets its initial burden of proof by demonstrating the absence of a genuine issue of material fact for trial, the nonmoving party must designate specific facts showing that there is a genuine issue for trial.[16] If the nonmoving party fails to satisfy this burden, the court must enter summary judgment in favor of the movant if the record before it demonstrates that the movant is entitled to judgment as a matter of law.  If the nonmoving

---

[13]Fed. R. Civ. P. 56(a).

[14]Fed. R. Civ. P. 56(c)(1)(a), (b).

[15]Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

[16]Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990); Matsushida, 475 U.S. at 586; Celotex, 477 U.S. at 323; Little, 37 F.3d at 1975.

party is unable, for reasons specified by affidavit or declaration, to present facts necessary to justify its opposition to the motion, the court may defer ruling on the motion, deny the motion, grant additional time for the taking of discovery or issue any other appropriate order.[17]

In considering a motion for summary judgment, the court will view the evidence before it in the light most favorable to the nonmoving party, but will not infer proof of facts not properly alleged and supported.[18]  Evidence presented in support of or in opposition to a motion for summary judgment must be of the sort that would be admissible in evidence at the trial of the matter.[19]

## II.    ANALYSIS

As explained above, the motions filed by Entergy and Interlink essentially constitute cross-motions for summary judgment as to the interpretation of the indemnity provision of the Agreement executed by their predecessors-in-interest.  The provision at issue states, in part, that the

> LICENSEE [Interlink] shall indemnify, protect and save harmless LICENSOR [Entergy] from and against any and all liability, loss, damages, expenses (including attorney's fees), actions, causes of action, suits, claims or judgments arising from damage to property and/or injury (including death) to any person or persons, including, but not limited to, employees of LICENSEE and any Contractor or sub-contractor performing work for LICENSEE and employees of LICENSOR and its contractors and subcontractors and also including payments made under any Workmen's Compensation Law or under any plan for employees' disability and death benefits, which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of Parties hereto, or by any act of LICENSEE on or in the vicinity of LICENSOR's poles, or other

---

[17]Fed. R. Civ. P. 56(d).

[18]Wallace v. Texas Tech University, 80 F.3d 1042 (5th Cir. 1996).

[19]Fed. R. Civ. P. 56(c)(2).

poles whereon LICENSEE maintains facilities, however caused.

LICENSEE specifically agrees that any and all liability, claims, demands, losses, damage, expenses or other costs incurred by LICENSOR arising out of or in connection with any unsafe and/or unserviceable condition and/or any violation of the National Electrical Safety Code created by or resulting from any attachment of LICENSEE shall be deemed by the Parties hereto as having been caused solely by the fault or negligence of LICENSEE. It is understood that the right of entry is granted upon the express condition that all risks hereto be assumed by LICENSEE and its employees.[20]

Entergy contends that the above language entitles it, as the licensor, to full defense and indemnity from Interlink, the licensee, if the jury assigns any fault to Interlink, no matter how slight.[21] Citing <u>Gatlin v. Entergy Corporation,</u>[22] a 2005 ruling by the Louisiana Fourth Circuit Court of Appeal, Entergy argues that this exact provision has been applied against a licensee by a Louisiana court and should be so applied by this court.

In that case, Entergy was a party to a pole sharing agreement with Cox Communications Louisiana, Inc. ("Cox"). The suit was brought by a Cox employee for injuries sustained while he was working on a Cox cable line attached to a pole owned by Entergy. The trial was bifurcated such that plaintiff's claims against Entergy were tried by jury, while Entergy's third party claims against Cox under the pole sharing agreement were tried later by the bench. During the jury trial of plaintiff's claims, the court ruled that Entergy would not be permitted to present evidence of any fault by Cox or of any Occupational Safety and Health Act ("OSHA") violations by plaintiff. The

---

[20]R. 66-3 at p. 6.

[21]R. 66-2 at p. 9.

[22]904 So.2d 31 (La. App. 4 Cir. 2005).

6

jury awarded $200,000 to plaintiff and apportioned thirty percent (30%) of the fault to plaintiff and seventy percent (70%) to Entergy.  After a bench trial on Entergy's claim for indemnity against Cox and National Union Fire Insurance Company, the court found that Entergy was not entitled to indemnity and dismissed Entergy's claims accordingly.  Entergy appealed the court's evidentiary and substantive rulings against it.

The appellate court found that the district court erred in prohibiting Entergy from presenting evidence of the fault of a third party under the holdings in both Dumas v. State ex rel. Department of Culture, Recreation & Tourism, 828 So.2d 530 (La. 2002) and Keith v. United States Fidelity & Guaranty Co., 694 So.2d 180 (La. 1997).  Citing those cases, the court held that the jury was entitled to hear evidence of the fault of third parties, even when those third parties are immune from liability or are not able to be identified.  Addressing Entergy's second assignment of error, the court found that

> [t]he language of the indemnity provision of the Agreement at issue requires Cox to defend ("save harmless") and indemnify [Entergy] for injuries caused as a result of Cox's performance of the license agreement even where the injuries are caused by [Entergy]'s own negligence.  This conclusion is based on the fact that paragraph 12 of the Agreement requires Cox to defend and indemnify [Entergy] for any injuries arising out of the performance of the Agreement "however caused."  As such, we find that the Agreement required Cox to defend and indemnify [Entergy].[23]

Entergy argues that this court should interpret the indemnity provision in the same way, issuing a judgment stating that Interlink owes Entergy indemnity if Interlink is found to be at fault in causing decedent's accident to any degree.  Entergy asserts that the Gatlin ruling demonstrates that the wording of the indemnity provision is clear and unambiguous and should be enforced as written.

_____

[23]Id. at p. 37.

Interlink, in both its memorandum in opposition to Entergy's motion and its memorandum in support of its own motion for summary judgment, argues that <u>Gatlin</u> is not controlling and that this court should, instead, be guided by other jurisprudence.  Specifically, Interlink points to three Louisiana Supreme Court cases, <u>Polozola v. Garlock, Inc.</u>,[24] <u>Perkins v. Rubicon, Inc.</u>[25] and <u>Berry v. Orleans Parish School Board</u>,[26] as demonstrative authority on several controlling rules for the interpretation of indemnity agreements under Louisiana law.

Interlink first asserts that <u>Polozola</u> stands for the proposition that, in order for an indemnity provision purporting to require indemnification of indemnitee for its own negligence, the provision at issue must state that intent in "unequivocal terms."  Interlink points out that, in <u>Polozola</u>, the Louisiana Supreme Court held that the following language was unambiguous and did require the indemnitor to indemnify the indemnitee against its own negligence:

> ARTICLE VI – INDEMNITY
>
> 6.1    Contractor assumes the entire responsibility and liability and will protect, indemnify and hold harmless Dow, its agents, servants and employees from and against Any and all losses, expenses, demands and claims made against Dow, its agents, servants and employees, by Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors or any other third person because of injury or alleged Injury (including death), Whether caused by Dow's negligence or otherwise, arising from any source while Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors are on premises owned, operated or leased by Dow or under the

---

[24]343 So.2d 1000 (La. 1977).

[25]563 So.2d 258 (La. 1990).

[26]830 So.2d 283 (La. 2002).

control of Dow, or while Contractor or its
subcontractors, or any employee, agent or servant of
Contractor or its subcontractors are performing under
this agreement, and Contracotr agrees to defend any
suit, action or cause of action brought against Dow, its
agents, servants or employees, based on any such
alleged injury, and to pay all damages, costs and
expenses, including attorneys' fees, in connection
therewith or resulting therefrom.[27]

While acknowledging the general rule that "indemnity contracts whereby the indemnitee is indemnified against the consequence of his own negligence must be strictly construed," the court found that the language cited above clearly expressed the parties' intent that Dow should be indemnified even against its own fault.[28]  The court based its ruling on the language "whether caused by Dow's negligence or otherwise" and found that the appellate court erred in concluding that this phrase was ambiguous as to the negligence of Dow's employees.[29]  The court reversed the appellate ruling, finding that Dow was owed indemnity for its own negligence under the provision at issue in that case.

Interlink argues that, comparing the key language of the Polozola provision with that of the provision at issue in the instant case, the Agreement now before this court falls short of the "unequivocal" terms standard applied by the Louisiana Supreme Court.  Interlink points out that the

_____

[27]Polozola, 343 So.2d at 1002.

[28]Id. at 1003 (internal citations omitted).

[29]The court based this portion of its ruling on the inclusion of the phrase "its agents, servants and employees" repeatedly throughout the remainder of the indemnity provision.  The court found that, although the key phrase "whether caused by Dow's negligence or otherwise" did not expressly include agents, servants and employees, the intent of the parties to include these persons was clear from a reading of the provision as a whole.  Id.

9

Agreement at issue in the instant case does not contain such unequivocal language, merely stating

that Interlink will indemnify Entergy for claims against it

> **which may arise out of or be caused by** the erection, maintenance,
> presence, use or removal of said attachments or by the proximity of
> the respective cables, wires, apparatus and appliances of Parties
> hereto, or by any act of LICENSEE on or in the vicinity of
> LICENSOR's poles, or other poles whereon LICENSEE maintains
> facilities, **however caused**.[30]

Interlink asserts that, in order to trigger its obligation to indemnify Entergy, the cited

language requires that the jury find that the erection, maintenance, presence, use, removal or

proximity to other property of the parties of Interlink's cables was the cause of the claim or claims

against Entergy.  Interlink further asserts that, reading the cited language as a whole, the phrase

"however caused" clearly refers to the listed forms of cause: erection, maintenance, presence, use,

removal or proximity and not, as argued by Entergy, to the contemplation of Interlink's liability for

Entergy's negligence.

In support of this argument, Interlink next cites Perkins v. Rubicon, a 1990 ruling by the

Louisiana Supreme Court in which the court considered an indemnity provision stating that Barnard

& Burk Plant Service, Inc. ("B & B") agreed to

> indemnify and hold [Rubicon] harmless from all claims, suits, actions,
> losses and damages for personal injury, including death and property
> damage, even though caused by the negligence of [Rubicon], arising
> out of [B & B's] performance of the work contemplated by this
> agreement.[31]

In that case, plaintiff sued Rubicon and its insurer for injuries allegedly caused by the

---

[30]R. 66-3 at p. 6.

[31]563 So.2d 258, 258 (La. 1990).

10

negligence of Rubicon employees while he was performing work for B & B under the contract between B & B and Rubicon.  Rubicon demanded defense and indemnity against plaintiff's claims and B & B refused.  The trial court granted summary judgment in Rubicon's favor and ordered B & B to defend and indemnify Rubicon.  The Louisiana First Circuit Court of Appeals affirmed and the case was granted certiorari by the Louisiana Supreme Court.

The state high court found that the provision at issue did require B & B to defend and indemnify Rubicon.  Noting that the courts' obligation as to the interpretation of indemnity contracts is to determine whether or not the "risk that resulted in the injury was one contemplated by the parties to the contract,"[32] the court found no ambiguity in the contract and held that the phrase "arising out of" indicated that B & B would indemnify Rubicon for those claims which would not have occurred "but for" the performance of the work under the contract.  The court compared the connexity between the claim and the activity to that required to show cause-in-fact.  Since plaintiff was an employee of B & B and would not have been on Rubicon's premises but for the contract at issue, the court found that defense and indemnity were triggered by plaintiff's claim and affirmed the district and appellate findings on this issue.

Interlink argues that, pursuant to the Louisiana Supreme Court's ruling in Rubicon, the phrase "arising out of," included in the indemnity provision at issue in this case, should be construed to require proof of "but for" causation in order to trigger its indemnity obligation.

Interlink next cites Berry v. Orleans Parish School Board, a 2002 ruling by the Louisiana Supreme Court, as authority that the phrase "any and all liability," as found within the indemnity provision at issue in the instant case, is insufficient to memorialize an intention by the parties that

---

[32] Id. at 259.

the indemnitor intends to indemnify the indemnitee against claims caused solely by the indemnitee's own negligence.[33]  In Berry, the court considered an indemnity provision which stated, in part, that Lighthouse (the contractor/indemnitor) would

> indemnify, hold harmless and defend the School Board [indemnitee], its employees and agents from and against all claims, demands, suits, damages, judgments of sums of money, losses and expenses, including but not limited to attorney's fees and costs ("Claims") arising out of the performance of any of the services to be performed pursuant to the terms of this Agreement, provided that any such Claims (i) are attributable to bodily injury, sickness disease or death, or injury to or destruction of tangible property including the loss of use resulting therefrom; and (ii) is [sic] caused in whole or in part by any act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder...[34]

Tracing much of the jurisprudence cited by Interlink above, the Berry court instructed that Louisiana "is committed to the majority view" that

> "general words alone, i.e., 'any and all liability' do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter."[35]

The plaintiff in Berry sued the Orleans Parish School Board ("OPSB") and Lighthouse separately for damages caused by the alleged sexual molestation of plaintiff's child at the hands of an employee of Lighthouse, the indemnitor under the contract at issue in that case.  While Lighthouse did not dispute its obligation to indemnify OPSB against claims based on the actions

---

[33]830 So.2d 283 (La. 2002).

[34]Id. at 283-84.

[35]Id. at 285.

of its employee, it did dispute any obligation to indemnify OPSB against claims based on OPSB's own independent negligence. OPSB argued that all of the claims in both suits, including those alleging such negligent acts by OPSB as failure to supervise, negligent training, hiring and screening, failure to properly investigate allegations of molestation and other such specific acts by OPSB, were all the result of the actions of Lighthouse's employee and, as such, Lighthouse's obligation to indemnify OPSB applied equally to these claims by plaintiff.

The Louisiana Supreme Court affirmed the appellate finding that the indemnity provision at issue in <u>Berry</u> did require Lighthouse to indemnify OPSB against plaintiff's separate claims against OPSB because the phrase "arising out of" required a "but for" showing under the court's prior ruling in Perkins. Additionally, the phrase "whether or not it is caused in part by a party indemnified hereunder" did not contradict the "but for" standard. The court reasoned that OPSB's negligence, without the negligence of Lighthouse, might not have resulted in harm to plaintiff's child and, thus, the provision did not violate Louisiana's adherence to the rule that requires an "unequivocal" statement of intent to hold an indemnitor liable for the sole negligence of the indemnitee.

Entergy observes that Interlink's arguments as cited above demonstrate that it agrees with Entergy's contention that, should the jury in this case find Interlink at fault for plaintiff's injuries to any degree, Interlink's obligation to defend and indemnify is triggered under the Agreement.[36] Our review of the briefs in this matter indicates, however that Interlink does, at least in the alternative, dispute this conclusion, arguing that, should we find that the language of the provision at issue requires Interlink to indemnify Entergy against its own sole negligence, the court should

---

[36]R. 86 at pp. 4-5.

sever the indemnity provision from the remainder of the contract for public policy reasons and, under a comparative fault analysis, it should only have to respond in judgment the extent that the jury assigns fault to it in this case.[37]

As acknowledged by Entergy and Interlink, the primary goal of this court in interpreting an indemnity contract is to determine the common intent of the parties.[38]  When the words of a contract are clear and lead to no absurd result, no further interpretation is necessary or should be undertaken by the court and the words should be enforced precisely as written.[39]  As cited above, indemnity contracts may not be construed to effect the indemnification of the indemnitee against his own negligence unless that intention is expressed in unequivocal terms.[40]

The court finds that the phrase "however caused" cannot be read in a vacuum and must be interpreted in light of the earlier portion of the provision which requires Interlink to indemnify Entergy against claims

> **which may arise out of or be caused by** the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of Parties hereto, or by any act of LICENSEE on or in the vicinity of LICENSOR's poles, or other poles whereon LICENSEE maintains facilities...(emphasis added).[41]

---

[37]R. 68-1 at pp. 17-21, R. 90 at pp. 3-4.

[38]La. Civ. C. Art. 2045.

[39]La. Civ. C. Art. 2046.

[40]Amoco Production Co. v. Forest Oil Co., 844 F.2d 251 (5th Cir. 1988); Graham v. Milky Way Barge, Inc., 824 F.2d 376 (5th Cir. 1987); Sovereign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La. 1986); Arnold v. Stupp Corp., 205 So.2d 797 (La. App. 1 Cir. 1967).

[41]La. Civ. C. Art. 2050 states that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a

14

We also find that the cited language must be read in conjunction with this sentence, which immediately follows:

> LICENSEE specifically agrees that any and all liability, claims, demands, losses, damage, expenses or other costs incurred by LICENSOR arising out of or in connection with any unsafe and/or unserviceable condition and/or any violation of the National Electrical Safety Code **created by or resulting from** any attachment of LICENSEE shall be deemed by the Parties hereto as having been caused solely by the fault or negligence of LICENSEE.  (Emphasis added)

In light of the Louisiana Supreme Court's clear instruction in Rubicon and Berry, we find that the Agreement clearly requires that the jury find that the "erection, maintenance, presence, use or removal" of Interlink's attachments to Entergy's poles or the proximity of Interlink's attachments to "cables, wires, apparatus and appliances" of either Entergy or Interlink was the "but for" cause of "any unsafe and/or unserviceable condition and/or any violation of the National Electrical Safety Code" which results in claims against Entergy.  While the court acknowledges the contrary ruling of the Louisiana appellate court in Gatlin, as cited by Entergy, we find that the great weight of Louisiana jurisprudence requires that we give effect to the language of the provision by recognizing the inclusion of the phrases "which may arise out of or be caused by" and "created by or resulting from."

Accordingly, we also find that, in the event that the jury makes such a finding, Interlink is obligated to defend and indemnify Entergy fully against such claims, though Entergy may be partially at fault.  We find that the parties clearly contemplated such result as reflected in the language above which requires Interlink to indemnify Entergy fully in such circumstance where,

---

whole."

though Interlink's attachment was the but for cause, Entergy may also have been negligent to some lesser degree. Given our finding that the Agreement requires that the jury assign "but for" causation to one or more enumerated acts by Interlink, our interpretation of this indemnity provision does not do violence to Louisiana's established rule that requires an unequivocal statement of intent to hold an indemnitor liable for injuries resulting solely from the indemnitee's own negligence, as we do not find that the Agreement requires that Interlink indemnify Entergy against claims for which the jury finds Entergy's own negligence to be the sole cause.[42]

In so holding, we specifically find that the language of the indemnity provision of the Agreement at issue in this case is clear and unambiguous, leading to no absurd result. Accordingly, we decline to sever such provision from the Agreement and reject Interlink's public policy arguments concerning indemnity contracts. Jurisprudence cited in Interlink's own motion demonstrates that these agreements are enforceable under Louisiana contract law.

Interlink's motion also seeks dismissal of all claims against it in this suit on the basis that remedial actions taken by Entergy following the decedent's death prove that Entergy is solely liable for the accident at issue. In this case, Entergy alleges that Interlink caused its poles to lean and, accordingly, its electrical lines attached thereto, to sag when it failed to install a guy wire and anchor to one or more of Entergy's poles in the area where the accident occurred.[43] Thus, Entergy argues that, but for Interlink's negligent acts, the accident at issue would not have occurred. In contrast, Interlink points out that, following the decedent's death, Entergy shortened or cut the length of its electrical cables and also moved such cables from the inside arm of the poles to the outside arm of

---

[42]Berry, 830 So.2d at 285 (citing Arnold, 205 So.2d at 799).

[43]R. 86 at pp. 1-2.

16

the poles.[44]  Interlink argues that these fixes indicate that it was Entergy's own electrical cables that caused decedent's electrocution.  Moreover, Entergy argues that the autopsy results clearly indicate that the decedent's death was caused by electrocution, further indicating that Entergy's electrical cables were the sole cause of the accident.[45]

We decline to grant this portion of Interlink's motion for two reasons.  First, the court has asked the parties for briefs on the evidentiary issue presented by Interlink's argument concerning evidence of remedial measures in this case.  It appears, however, that the Federal Rules of Evidence, particularly Rule 407, are clear that evidence of remedial measures is not admissible to prove negligence or culpability.[46]  Thus, while evidence of this nature may be admissible at trial for some other intended purpose, we are satisfied that it is not competent summary judgment evidence of Entergy's negligence as the sole cause of the decedent's death.

Additionally, as evidenced by the allegations of Interlink and Entergy explained above, a genuine dispute as to a material fact issue remains concerning the condition of the electrical poles and lines at the time of the accident, and the cause or causes thereof.  Accordingly, summary judgment should be denied.

## III.    CONCLUSION

The court has carefully considered the law and argument advanced by the parties in favor of

---

[44]R. 68-1 at pp. 2-3 citing testimony of Entergy employee Kerry Desselle, attached as "Exhibit C" to Interlink's motion.

[45]Id. at p. 2 citing autopsy report of Avoyelles Parish Coroner's Office, attached as "Exhibit B" to Interlink's motion.

[46]Brazos River Authority v. GE Ionics, Inc., 469 F.3d 416 (5th Cir. 2006); Bailey v. Kawasaki-Kisen, K.K., 455 F.2d 392 (5th Cir. 1972).

and against the respective motions for summary judgment now pending in this case.  Based on Louisiana jurisprudence interpreting indemnity provisions discussed above, the court finds that the indemnity provision of the Agreement existing between Entergy and Interlink is unambiguous and requires a finding of fault on the part of Interlink by the jury in this case.  We further find that the jury must specifically find that the "erection, maintenance, presence, use or removal" of Interlink's attachments to Entergy's poles or the proximity of Interlink's attachments to "cables, wires, apparatus and appliances" of either Entergy or Interlink was the "but for" cause of "any unsafe and/or unserviceable condition and/or any violation of the National Electrical Safety Code" which results in claims against Entergy.  In the event that the jury attributes "but for" causation to one or more enumerated acts by Interlink, we do find that the Agreement among these parties requires Interlink to fully defend and indemnify Entergy against such claims, though Entergy may be found negligent to some lesser degree.  We find that such result was unequivocally stated and clearly intended by the parties in this case.

We decline to grant summary judgment dismissing all claims by Entergy against Interlink, however, on the basis that important genuine disputes remain as to the cause of the condition of the poles and electrical lines at the time of the accident at issue in this case.

The court will issue a judgment and order in conformity with these findings.

Alexandria, Louisiana
April ___20___ , 2011

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE